UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE: )
)
Franklin E. McCain, Jr., )   Case No. 05-14382C-7G
)
    Debtor. )
)

MEMORANDUM OPINION

This case came before the court on May 17, 2006, for hearing upon a motion to dismiss case filed by the United States Bankruptcy Administrator. Robyn C. Whitman appeared on behalf of the Bankruptcy Administrator and Phillip E. Bolton appeared on behalf of the Debtor.

The motion seeks dismissal of this case pursuant to section 707(b) of the Bankruptcy Code. Under section 707(b) the court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds the granting of relief would be a substantial abuse of the provisions of this chapter."[1]

There are two requirements in order for section 707(b) to be applicable: the debts in the case must be primarily consumer debts and it must be shown that granting the debtor a Chapter 7 discharge would involve a "substantial abuse" of the provisions of Chapter 7. In the present case, it is undisputed that the debts are primarily

---

[1] The 2005 amendments to section 707 are not applicable in this case because this case was filed prior to the effective date of such amendments.

consumer debts.[2]  Hence, the only issue for determination is whether granting the Debtor a Chapter 7 discharge would involve a substantial abuse of the provisions of Chapter 7.

There is no statutory definition of "substantial abuse" to aid in this determination.  Various tests or rules have been developed by the courts.  However, the rule most cited in the Fourth Circuit is the one adopted in In re Green, 934 F.2d 568 (4th Cir. 1991).  In Green, the court declined to adopt a per se rule under which a debtor's ability to pay his or her debts, standing alone, justifies a section 707(b) dismissal.  See id. at 572.  Instead, while specifically recognizing that the debtor's ability to pay is the primary factor to be considered, the court ruled that "the substantial abuse determination must be made on a case-by-case basis, in light of the totality of the circumstances."  Id. at 572-73.  The court then provided the following examples of the circumstances or factors to be considered:  (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment;  (2) whether the debtor incurred consumer credit in excess of his or her ability to pay;  (3) whether the debtor's family budget is excessive or unreasonable;  (4)

---

[2]Under section 101(8) of the Bankruptcy Code a consumer debt is a "debt incurred by an individual primarily for a personal, family, or household purpose."  A debt "not incurred with a profit motive or in connection with a business transaction" is considered consumer debt for purposes of § 707(b).  See In re Kestell, 99 F.3d 146, 149 (4th Cir. 1996).

- 2 -

whether the schedules and statement of financial affairs reasonably and accurately reflect the debtor's true financial condition; (5) the debtor's ability to pay; and (6) whether the petition was filed in good faith.  See id. at 572.  Having considered these and the other circumstances involved in the present case, the court has concluded that the granting of a Chapter 7 discharge in this case would involve a substantial abuse of Chapter 7.

Although not all of the Green factors weigh against the Debtor, there are several factors that weigh heavily against the Debtor.  The first of the factors that weigh against the Debtor is that the filing of this case was the result of the Debtor recklessly incurring gambling debts and not any calamity or other unavoidable circumstance. The Debtor has enjoyed good health and has had significant, stable income over a period of several years preceding the filing of this case.  Hence, this case was not filed as a result of sudden illness, calamity, disability or unemployment.

The evidence established that during a period extending from 1999 into 2004, the Debtor engaged in gambling at various gambling casinos that left him with over $64,000.00 in gambling debts that remained unpaid when this case was filed.  These gambling debts accounted for more than 50% of the unsecured debts listed in the Debtor's schedules.  The remainder of the Debtor's unsecured debts consisted primarily of credit card indebtedness.  The Debtor was

unable to provide a plausible explanation for how such large credit card indebtedness was incurred by him at a time when both he and his spouse were both employed at jobs that produced total income well in excess of $100,000.00 during the years in which the indebtedness was incurred.  Even so, it was clear from the evidence that the Debtor incurred consumer indebtedness in excess of his ability to pay.  Debtor's contention that he had the ability to pay the indebtedness when it was incurred was not supported by the evidence.  Although the Debtor did sustain a significant drop in income in 2003, the evidence reflected that he continued to gamble and spend excessively during 2003 and into 2004 and it is reasonable to infer from the evidence that he incurred indebtedness during that period that was beyond his ability to pay, based upon his earnings at the time.

The evidence established that the Debtor's family budget is excessive and unreasonable.  The evidence also established that with a reasonable budget the Debtor has the ability to pay his creditors within the meaning of section 707(b).  Thus, these factors weigh against the Debtor, as well.  The most important factor in determining whether substantial abuse exists under section 707(b) is the ability of the debtor to pay his creditors.[3]

---

[3]In Green, the court stated: "Kelly is correct, however, insofar as it indicates that the majority of the cases hold that the debtor's ability to pay is the primary factor to be considered." 935 F.2d at 572.

The Debtor's ability to pay thus weighs heavily against him and tips the section 707(b) scales against him.

Making an analysis of a debtor's ability to pay under section 707(b) involves examining the debtor's future income and future expenses.  See In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989); Waites v. Braley, 110 B.R. 211, 214-15 (E.D. Va. 1990).  This is particularly true where, as in the present case, a debtor has stable income.  The ability of a debtor to repay his or her creditors generally is measured by "assessing how much disposable income a debtor would be able to pay his or her unsecured creditors under a three to five year Chapter 13 plan."  In re DeRosear, 265 B.R. 196, 203-04 (Bankr. S.D. Iowa 2001).  A debtor's disposable income is determined in accordance with the definition contained in section 1325(b)(2) of the Bankruptcy Code using income and expense figures that are reasonable and accurate.  See id. at 204.  Many courts base the ability to pay determination upon the percentage of unsecured debt that could be repaid by the debtor in a Chapter 13 case, although the percentages regarded as reflecting an ability to pay have varied from case to case.  See In re Norris, 225 B.R. 329, 332 (Bankr. E.D. Va. 1998).  However, in a section 707(b) case, a court is not limited to looking solely at the percentage of debt that could be paid under a Chapter 13 plan.  "Otherwise debtors would be rewarded for having more debt rather than less."  In re Falke, 284 B.R. 133, 140 (Bankr. D. Ore. 2002).  Thus, instead of

relying upon the percentage of debt that can be paid, the court instead may look at the aggregate amount that a debtor can pay and, if that amount is substantial, may find that the debtor has the ability to pay for purposes of § 707(b).  <u>Id.</u>  However, "the essential inquiry remains whether the debtor's ability to repay creditors with future income is sufficient to make the Chapter 7 liquidating bankruptcy a substantial abuse."  <u>In re DeRosear</u>, 265 B.R. at 204 (citing <u>Fonder v. United States</u>, 974 F.2d 996, 999 (8th Cir. 1992)).

According to Debtor's Schedule I, when this case was filed he had gross income of $4,040.00 per month and net income of $2,754.00.  However, in arriving at his net income figure, the Debtor deducted from his monthly gross income the sum of $296.00, which apparently is being withheld for a 401(k) contribution and the purchase of savings bonds.  Such voluntary contributions are not reasonably necessary for the support and maintenance of a debtor or dependents of a debtor and in the context of a section 707(b) determination should be treated as disposable, available income for purposes of evaluating whether the debtor has the ability to repay her creditors.  See <u>In re Taylor</u>, 212 F.3d 395, 397 (8th Cir. 2000); <u>In re Anes</u>, 195 F.3d 177, 180-81 (3d Cir. 1999); <u>In re Heffernan</u>, 242 B.R. 812, 818 (Bankr. D. Conn. 1999); <u>In re Johnson</u>, 241 B.R. 394, 399-401 (Bankr. E.D. Tex. 1999).  This means that the Debtor's net monthly income is $3,050.00 per month

for purposes of determining the amount of his disposable income.

Debtor's Schedule J sets forth the expenses which he listed when this case was filed. In determining whether a Chapter 7 case should be dismissed as a substantial abuse of Chapter 7, it is appropriate for the court to consider whether the expenses claimed by a debtor can be reduced significantly without depriving the debtor of adequate food, clothing, shelter and other necessities of life. See In re Engskow, 247 B.R. 314, 317 (Bankr. M.D. Fla. 2000). The expenses that may be reviewed in making such an analysis include the mortgage payments or rent paid by the debtor for housing. See id. (budget was "extravagant and unreasonable" based upon the amount included for mortgage payments and utilities); In re Smith, 229 B.R. 895, 899 (Bankr. S.D. Ga. 1997)(mortgage payment of $1,695.00 was not reasonable); In re Carlton, 211 B.R. 468, 473 (Bankr. W.D.N.Y. 1997)(residence rental of $3,000.00 per month for a family of four was unreasonable and excessive).

The Debtor has itemized monthly living expenses in Schedule J that total $6,745.00, which are the expenses for the Debtor and his family which consist of his spouse and two minor children. The expenses listed by the Debtor include monthly housing costs of $3,655.00, consisting of monthly mortgage payments totaling $3,455.00 on a residence that the Debtor and his spouse are purchasing and monthly maintenance of $200.00. This $3,655.00.00

monthly expense enables the Debtor to live in a residence which he values at $490,000.00. The residence is a 3,618 square foot residence with four bedrooms and is situated on a lot with a swimming pool. The court concludes that such a large monthly housing expense is excessive and unreasonable for an individual seeking a Chapter 7 discharge. See In re DeRosear, 265 B.R. 196, 218 (Bankr. S.D. Iowa 2001)("While the sentimental reason underlying the Debtors' desire to continue living in their current homestead may be understandable, it does not justify permitting them to erase an otherwise manageable debt load via a Chapter 7 proceeding."). As a result, in deciding whether the Debtor has the ability to pay, this excessive monthly expense should be reduced to $2,000.00, which takes into account that housing is required for a family of four.

There are several other items that should be reduced or eliminated from the expenses claimed by the Debtor on his Schedule J. The Debtor included $175.00 for real estate taxes on the residence which should be eliminated because the mortgage payments include taxes and insurance. The $400.00 figure for electricity and heating reflects Debtor's oversized housing and should be reduced by $100.00. Debtor's monthly telephone expense of $150.00 is excessive and should be reduced by at least $75.00. Finally, Debtor's Schedule J includes $200.00 for his spouse's bills, which should be eliminated since those bills are paid by his spouse from

her earnings.

In summary, the court finds that the Debtor's family budget is excessive and unreasonable with respect to foregoing items and that the expenses listed on Schedule J should be reduced to $4,540.00 for purposes of making the section 707(b) assessment of the Debtor's ability to pay.

As noted earlier, the Debtor's spouse also is employed and the expenses listed on Schedule J include her living expenses. In his Schedule I, the Debtor listed gross income of $6,854.00 per month and net income of $3,884.00 for his spouse. According to the evidence, the Debtor's spouse shares in paying the expenses listed in Schedule J. The spouse's contribution to the family expenses of the Debtor is a factor that should be considered in determining whether the Debtor has the ability to repay his creditors for purposes of the motion to dismiss pursuant to section 707(b). At a minimum, the income of the non-filing spouse is relevant to the court's evaluation of how much of the Debtor's income is required for his support because, in calculating whether there is disposable income available to pay creditors, it is appropriate for the court to consider the degree to which a debtor's daily living expenses are shared as co-obligations of the non-filing spouse or are assumed completely by the spouse. See In re Falke, 284 B.R. 133, 138-39 (Bankr. D. Or. 2002); In re Staub, 256 B.R. 567, 571 (Bankr. M.D. Pa. 2000); In re Engskow, 247 B.R. at 317; In re Wilkinson,

168 B.R. 626, 628-29 (Bankr. N.D. Ohio 1994).

In the present case, the Debtor does not rely upon his income alone to pay for the family expenses listed in his Schedule J. Instead, according to Debtor's spouse she pays most of the family expenses. Therefore, in determining the amount of the Debtor's disposable income, it is appropriate, at a minimum, to apply the spouse's income to half of the joint expenses as well as to those expenses which are hers alone. See In re Reese, 236 B.R. 371, 375-76 (Bankr. N.D. Ohio 1999). In the present case, this calculation has the effect of reducing the figure for living expenses from $4,540.00 to $2,270.00. This figure of $2,270.00 represents the expense figure which should be utilized in the present case in determining the amount of the Debtor's disposable income. Using that figure and the previously discussed income figure of $3,050.00, the court finds that the Debtor has disposable income of at least $780.00 per month for purposes of making the section 707(b) determination of Debtor's ability to repay his creditors. This means that over a period of 36 months, the Debtor has the ability to pay a total of $28,080.00 pursuant to a hypothetical Chapter 13 plan. There are no taxes or other priority debts in this case. Thus, even if 10% of the payments are deducted for Chapter 13 fees and expenses, it appears that a Chapter 13 Trustee would be left with $25,272.00 for distribution to creditors. It is true that the dividend produced by such a payout would be less than

25%. However, such is the case because of the size of the excessive and unnecessary indebtedness incurred by the Debtor. Such a circumstance should not work in favor of a debtor faced with a section 707(b) challenge. Hence, given the debt picture and the other circumstances of this case, the court is satisfied that the ability of the Debtor to pay in excess of $25,000.00 to his creditors over a period of three years constitutes an ability to pay creditors which renders this case substantially abusive for purposes of section 707(b) without regard to the percentage of the payout that would be produced.

CONCLUSION

Having considered the totality of the circumstances presented by this case, the court concludes that the granting of Chapter 7 relief in this case would be a substantial abuse of the provisions of Chapter 7. However, before dismissing this case, the court will allow the Debtor fifteen days within which to convert this case to Chapter 13. If such a conversion does not occur within fifteen days, an order shall be entered dismissing this case.

This 16th day of June, 2006.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST

Phillip E. Bolton, Esq.
P.O. Box 10247
Greensboro, NC 27404-0247

Franklin E. McCain, Jr.
3800 Buncombe Drive
Greensboro, NC 27407

Michael D. West
Bankruptcy Administrator